FILED BY CLERK

JUN 16 2009

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| COUNTY OF COCHISE, a Political Subdivision of the State of Arizona, | ) ) ) | 2 CA-CV 2008-0146 DEPARTMENT A |
| Plaintiff/Counterdefendant/ Appellee, | ) ) ) | O P I N I O N |
| v. | ) ) | |
| SEBASTIAO FARIA and MARIA F. FARIA dba FARIA DAIRY, | ) ) ) | |
| Defendants/Counterclaimants/ Appellants. | ) ) ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV 2007-00716

Honorable Stephen M. Desens, Judge

AFFIRMED

Edward G. Rheinheimer, Cochise County Attorney
  By Britt W. Hanson                                                      Bisbee
                                                          Attorneys for Plaintiff/
                                                  Counterdefendant/Appellee


Jennings Strouss & Salmon, PLC
  By Brian Imbornoni                                                     Phoenix
                                                         Attorneys for Defendants/
                                                 Counterclaimants/Appellants

H O W A R D, Presiding Judge.

¶1        Appellants Sebastiao Faria and Maria Faria, dba Faria Dairy, appeal from the trial court's order granting summary judgment in favor of appellee Cochise County and enjoining the Farias from using a parcel of real property to run a heifer pen-feeding operation. The Farias claim the court erred in ruling that their use of the property was not exempt from county zoning regulation as a "general agricultural purpose[]" pursuant to A.R.S. § 11-830(A)(2), and that A.R.S. § 11-821.01(A) authorized the county to regulate their use of the property. We conclude that uses included under § 11-821.01 are not "general agricultural" uses under § 11-830, and affirm.

**Facts**

¶2        We view the facts in the light most favorable to the party opposing summary judgment and draw all reasonable inferences arising from the evidence in favor of that party. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App. 1996). The Farias own real property on both sides of Kansas Settlement Road in Cochise County. In 2003, the Farias began operating a dairy farm on the part of the property that is located east of the road and that is zoned as HI (Heavy Industry). In 2006, the Farias constructed feeding pens on the property on the west side of the road, which is zoned as RU-4 (Rural District, minimum site area four acres). The feeding pens consist of two parallel rows of pens that are approximately one-half mile in length. Troughs run through the pens to channel urine,

2

manure, feed and detritus into a detention basin.[1]  The Farias began using the west property to raise heifers born on the dairy farm.  The pens are used for supplemental feeding of the heifers and the heifers are also permitted to graze on approximately 300 acres of adjoining land.  Most heifers raised on the west property are eventually transferred back to the dairy farm for use as milk cows.  Approximately 3,000 heifers are being raised on the west property at any given time.

¶3        The Cochise County planning department sent the Farias a notice of zoning violation for operating a commercial feed lot without a permit.  In response, the Farias applied for a special use permit, which was denied.  The Farias appealed to the Cochise County Board of Supervisors and contended they did not need a special use permit because the feeding pens fell within the definition of "general agricultural purpose" under § 11-830(A)(2).  The Farias asserted they were not waiving this position but that they also wished to proceed with the appeal to try to obtain a special use permit and thereby avoid further litigation.  The Board of Supervisors denied the appeal.  The Farias continued to operate the pen-feeding facility on their land.

¶4        Subsequently, the county sued the Farias alleging they were in violation of a zoning regulation and requesting an injunction.  The Farias counterclaimed, seeking, inter

---

[1]The facts relating to the structural description of the feeding pens are taken from the county's statement of facts filed with its motion for summary judgment. The Farias objected to the relevance of and foundation for these facts and filed a corresponding motion to strike materials offered in support of the county's statement.  However, the Farias subsequently withdrew their motion to strike the relevant materials and have never disputed the accuracy of the facts alleged.

alia, declarative relief. The parties filed cross-motions for summary judgment. The trial court denied the Farias' motion for summary judgment, found the heifer feeding was a like business under § 11-821.01(A), granted the county's motion, and enjoined the Farias from using the property as a "pen feeding operation for its heifers."

## Discussion

¶5 The Farias argue the trial court erred in granting summary judgment in favor of the county and enjoining them from using the property for pen-feeding. They contend the pen-feeding facility is a use for a general agricultural purpose and thus exempt from county zoning regulation pursuant to § 11-830(A)(2). They further argue that the trial court erred in concluding the county could regulate their use of the property under § 11-821.01(A).

¶6 Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). We review de novo whether there are any genuine issues of material fact and whether the trial court applied the law properly. *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, ¶ 8, 156 P.3d 1157, 1160 (App. 2007). We also review de novo questions regarding the construction of statutes. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). We review the trial court's decision to grant injunctive relief for an abuse of discretion. *Cochise County v. Broken Arrow Baptist Church*, 161 Ariz. 406, 408, 778 P.2d 1302, 1304 (App. 1989). A court abuses its discretion if its decision is based on an incorrect interpretation of the law. *See Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, ¶ 27, 156 P.3d 1149, 1155 (App. 2007).

4

¶7        The power of a county's board of supervisors derives solely from state statute. *Hart v. Bayless Inv. & Trading Co.*, 86 Ariz. 379, 384, 346 P.2d 1101, 1105 (1959).  When a county enacts zoning regulations, it must "adhere to the state statutes which delegate that power."  *Sandblom v. Corbin*, 125 Ariz. 178, 184, 608 P.2d 317, 323 (App. 1980).  The statutes delegating power to the counties are set forth in Title 11 of the Arizona Revised Statutes.  Section 11-821(B), which is in chapter six—County Planning and Zoning—directs the counties to adopt county plans to provide zoning for "various classes of residential, business and industrial uses."  Section 11-830(A)(2) provides that "[n]othing contained in any ordinance authorized by this chapter shall . . . [p]revent, restrict or otherwise regulate the use or occupation of land or improvements for railroad, mining, metallurgical, grazing or general agricultural purposes, if the tract concerned is five or more contiguous commercial acres."  The legislature did not define "general agricultural purposes."  It enacted §§ 11-821 and 11-830(A)(2) in 1949.  *See* 1949 Ariz. Sess. Laws, ch. 58, §§ 7, 16.

¶8        In 1963, the legislature added § 11-821.01, entitled "Duty to zone certain area for canneries, fertilizer plants, refineries, commercial feed lots, meat packing plants, tallow works, and other like businesses."  1963 Ariz. Sess. Laws, ch. 94, § 1.  Section 11-821.01(A) states in relevant part:

> The county planning and zoning commission shall designate and zone appropriate areas of reasonable size in which there may be established with reasonable permanency canneries, fertilizer plants, refineries, commercial feed lots, meat packing plants, tallow works, and other like businesses, and the county board of supervisors shall by ordinance adopt at least one of any such plans as may be submitted by the commission to the board for the location of such businesses.

5

The legislature did not define or provide a test for "other like businesses."

¶9         When construing a statute, we must "determine and give effect to legislative intent." *City of Phoenix v. Phoenix Employment Relations Bd.*, 207 Ariz. 337, ¶ 11, 86 P.3d 917, 920 (App. 2004). We look first to the plain language of the statute because that is the best indicator of legislative intent. *Mejak v. Granville*, 212 Ariz. 555, ¶ 8, 136 P.3d 874, 876 (2006). Because the legislature did not define "general agricultural purposes," § 11-830 is ambiguous. Accordingly, we also "'consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose.'" *Scheehle v. Justices of the Supreme Court of the State of Arizona*, 211 Ariz. 282, ¶ 16, 120 P.3d 1092, 1098 (2005), *quoting Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). "[E]ach word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant." *Pinal Vista Props., L.L.C. v. Turnbull*, 208 Ariz. 188, ¶ 10, 91 P.3d 1031, 1033 (App. 2004). When interpreting a particular term, "'we apply a practical and commonsensical construction.'" *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 33, 181 P.3d 219, 230 (App. 2008), *quoting Douglass v. Gendron*, 199 Ariz. 593, ¶ 10, 20 P.3d 1174, 1177 (App. 2001).

¶10         "'We presume the legislature is aware of existing statutes when it enacts new statutes.'" *Home Builders Ass'n of Cent. Ariz. v. City of Maricopa*, 215 Ariz. 146, ¶ 15, 158 P.3d 869, 874 (App. 2007), *quoting Washburn v. Pima County*, 206 Ariz. 571, ¶ 11, 81 P.3d 1030, 1035 (App. 2003). When "statutes relate to the same subject and are thus in *pari materia*, they should be construed together with other related statutes as though they

6

constituted one law." *Pima County by City of Tucson v. Maya Constr. Co.*, 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988); *see also State ex rel. Thomas v. Ditsworth*, 216 Ariz. 339, ¶ 12, 166 P.3d 130, 133 (App. 2007) (pari materia rule "'applies even where the statutes were enacted at different times, and contain no reference . . . to [each] other'"), *quoting State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). Statutes granting zoning authority to the counties, and zoning ordinances enacted pursuant to that authority, will be strictly construed in favor of property owners. *Robinson v. Lintz*, 101 Ariz. 448, 451, 420 P.2d 923, 926 (1966); *Jones v. County of Coconino*, 201 Ariz. 368, ¶ 11, 35 P.3d 422, 425 (App. 2001).

**¶11**        According to its plain language § 11-821.01 protects the types of businesses listed by ensuring they have a zone within which to operate. *See Mejak*, 212 Ariz. 555, ¶ 8, 136 P.3d at 876 (statute's plain language best indicator of legislative intent); Milton R. Schroeder, *Public Regulation of Private Land Use in Arizona: An Analysis of its Scope and Potential*, Law & Soc. Order 747, 789 (1973) (observing protective nature of § 11-821.01). The wording in the title of § 11-821.01, "[d]uty to zone," and the wording in subsection (A), "[t]he county planning and zoning commission *shall* designate and zone appropriate areas of reasonable size . . . with reasonable permanency" (emphasis added), show that the legislature has created an affirmative duty on the part of counties to allow the types of businesses listed to operate somewhere in each county. The requirement that counties designate appropriate areas, and that such areas be reasonably permanent, ensures that

counties cannot enact ordinances prohibiting these businesses in each and every county, and thus the entire state, under general statutory zoning authority.[2] *See* § 11-821.

¶12        If the legislature believed commercial feedlots and like businesses fell within the category of "general agricultural purposes" under § 11-830(A)(2), then the legislature would not have needed to extend the protection afforded by § 11-821.01 to commercial feedlots or businesses that are "like" commercial feedlots. *See Home Builders*, 215 Ariz. 146, ¶ 15, 158 P.3d at 874 (legislature presumed aware of existing statutes when enacting new one). Such businesses already would be protected from zoning regulations by the exemption in § 11-830(A)(2). If that were true, then including commercial feedlots in § 11-821.01(A) would have been superfluous.

¶13        At oral argument, the Farias postulated that, because both §§ 11-830 and 11-821.01 were designed to protect commercial feedlots in some way, these statutes offered "redundant protection" to feedlots and similar uses. The Farias further suggested that it would not make sense to use one protective section to restrict the protection afforded by another protective section. "Redundant protection" is one plausible or practical explanation for the two statutes. But the Farias could not offer, and we have not found, any authority for

---

[2]This analysis is slightly different than that in the county's brief. The county treated § 11-821.01 as though its purpose is to give the counties the authority to generate restrictions on the types of businesses listed, which implicitly suggests that before the statute was enacted the counties had no authority to regulate them. But § 11-821 provides broad authority to the counties to regulate land use and no zoning statute other than § 11-830 exempts any particular use from regulation. Thus, the types of businesses listed in § 11-821.01 were subject to regulation by the counties before that statute was enacted. *See Schroeder*, Law & Soc. Order at 789 (§ 11-821.01 protective of activities listed). At oral argument, the county agreed this interpretation was correct.

the proposition that this court can interpret two related sections as redundant. Rather, as previously noted, we assume the legislature knew about existing law, *see Home Builders*, 215 Ariz. 146, ¶ 15, 158 P.3d at 874, and did not enact a redundant statute. *See Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, ¶ 8, 152 P.3d 490, 493 (2007) (courts interpret statutes so no part will be redundant).

¶14        We also acknowledge the initial appeal of the Farias' contention, emphasized at oral argument, that the general agricultural purposes exemption in § 11-830(A)(2) includes the Farias' use and precludes application of any zoning ordinance, including ordinances contemplated under § 11-821.01. The Farias contend that it is therefore simply unnecessary to consider § 11-821.01 when determining the scope of the county's zoning authority in this case. But because the legislature has not defined "general agricultural purposes," we are required to construe that statutory language. *See Stein v. Sonus USA, Inc.*, 214 Ariz. 200, ¶ 3, 150 P.3d 773, 774 (App. 2007) (court applies rules of statutory construction to ambiguous statute).

¶15        Because "commercial feedlots" are uses of an agricultural nature of some kind, their inclusion in § 11-821.01 means that both § 11-821.01 and § 11-830(A)(2) relate to the same subject. As noted above, statutes relating to the same subject must be construed together "as though they constituted one law." *See Maya Constr.*, 158 Ariz. at 155, 761 P.2d at 1059. To ignore § 11-821.01 in this case would essentially divest the inclusion of "commercial feedlots" and "other like businesses" in § 11-821.01 of any effectiveness, which we cannot do. *See id.*

9

¶16 Additionally, because § 11-821.01(A) does not refer to the size of the parcel used, its language does not support the Farias' argument that it was intended only to protect commercial feed lots and like businesses of less than five commercial acres. When § 11-821.01 was enacted, § 11-830 protected general agricultural uses of "not less than two contiguous acres." 1949 Ariz. Sess. Laws, ch. 58, § 16. The statutes would not comport with common sense if they provided for the regulation of small feedlots occupying less than two acres, if such uses even exist, but exempted much larger feed lots—that would be of much greater concern to neighboring land owners—from all zoning regulations.

¶17 Because we will not, as noted earlier, construe a statute in a way that renders any part superfluous, *see Pinal Vista Props.*, 208 Ariz. 188, ¶ 10, 91 P.3d at 1033, or nonsensical, *see Clear Channel Outdoor*, 218 Ariz. 172, ¶ 33, 181 P.3d at 230, we conclude that § 11-830(A)(2) does not protect commercial feedlots and like businesses and that § 11-821.01 was enacted to do so. Accordingly, we conclude the legislature did not intend the term "general agricultural purposes" in § 11-830(A)(2) to include commercial feedlots or businesses like commercial feedlots.[3]

¶18 Based upon the foregoing analysis, if the Farias' use of the property constitutes a commercial feedlot or a business that is "like" a commercial feedlot, then it is not exempt from regulation under § 11-830(A)(2). The Farias did not argue below that their business

---

[3]To the extent this decision does not interpret §§ 11-821.01 and 11-830 as the legislature intended, we note that the "'legislature retains the power to correct us.'" *Hancock v. Bisnar*, 212 Ariz. 344, ¶ 22, 132 P.3d 283, 288 (2006), *quoting Galloway v. Vanderpool*, 205 Ariz. 252, ¶ 17, 69 P.3d 23, 27 (2003).

was not an "other like business" under § 11-821.01 and the trial court found that it was. Because the Farias did not factually dispute the contention that their use was an "other like business" before the trial court, or in their opening brief on appeal, that argument is waived. *See Brookover*, 215 Ariz. 52, n.2, 156 P.3d at 1162 n.2 (appellate court will not consider arguments not presented to trial court at time trial court considered summary judgment motion); *Dawson v. Withycombe*, 216 Ariz. 84, n.11, 163 P.3d 1034, 1050 n.11 (App. 2007) (arguments not raised in opening brief waived).

**Conclusion**

¶19      In light of the foregoing, we affirm the trial court's grant of summary judgment in favor of the county. We further affirm the trial court's order enjoining the Farias from maintaining their pen feeding operation on the subject property.


_____
JOSEPH W. HOWARD, Presiding Judge


CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
PHILIP G. ESPINOSA, Judge


11